UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**TERRI PAYNE,**

    **Plaintiff,**

    **v.**                                                    **Case No. 18-CV-850**

**CORRECTIONAL OFFICER STACY,**
**CORRECTIONAL OFFICER MCDONALD,**
**JON E. LITSCHER,**
   Department of Corrections Secretary, and
**JOHN DOE,**
   CTC Wisconsin Department of Corrections Training Academy,

    **Defendants.**

---

### DECISION AND ORDER ON
### MOTIONS FOR SUMMARY JUDGMENT

---

Terri Payne, who is representing herself, brings this lawsuit against Wisconsin Department of Corrections ("Department") Correctional Officers McDonald and Stacy, Department Secretary Jon E. Litscher, and an unnamed Department academy trainer (collectively "Defendants"). (Complaint, Docket # 1.) Payne alleges that McDonald and Stacy violated her constitutional right to be free from the excessive use of force and that Litscher and Doe failed to properly train the correctional officers. The parties have filed motions for summary judgment. (Plaintiff's Motion for Summary Judgment, Docket # 44; Defendant's Renewed Motion for Summary Judgment, Docket # 52.) For the reasons explained below, Payne's motion for summary judgment is denied, and Defendants' motion for summary judgment is granted.

## FACTUAL BACKGROUND

Terri Payne and her daughter-in-law, Wanesha Banks, visited Payne's fiancé, an inmate then-incarcerated at Green Bay Correctional Institution ("GBCI"), three times during the week of September 4, 2016. (Complaint ¶ 12, Docket # 1.)[1] Payne claims that, during the first two visits, the correctional officer in charge of screening visitors, Dan McDonald, touched a handheld metal detector to the top of her buttocks and allowed the metal detector to rest there for several seconds. (Plaintiff's Proposed Findings of Fact ("PPFOF") ¶¶ 38–39, Docket # 45.)[2] Payne claims that, during the third visit, the correctional officer in charge of screening visitors, Deanna Stacy, pressed a handheld metal detector against her back and moved it up and down. (PPFOF ¶ 40.) "Fed up with being molested with a hand-held metal detector by Green Bay Correctional Institution's staff, Ms. Payne told Stacy to take the hand-held metal detector off of Ms. Payne's back and that she was tired of being touched with a hand-held metal detector." (*Id.*) Payne claims that the metal detector incidents exacerbated her pre-existing anxiety issues and that, following the incidents, she began having frequent panic attacks and developed a stomach ulcer. (*See* PPFOF ¶¶ 41–47.) As of August 2019, Payne's fiancé was no longer incarcerated at GBCI. (DPFOF ¶ 2.)

McDonald was stationed as the lobby officer during Payne's visits to GBCI the week of September 4, 2016. (DPFOF ¶¶ 13–16.) Thus, he would have been the correctional officer

---

[1] The precise dates have been a moving target throughout this case. During a status conference with U.S. Magistrate Judge David E. Jones on July 9, 2019, Payne confirmed that the time period in question was September 4, 2016, through September 12, 2016. (Minute Sheet, Docket # 51.) Records from GBCI show that Payne visited her fiancé four times that week: September 4, 5, 9, and 10. (Defendants' Proposed Findings of Fact ("DPFOF") ¶ 14, Docket # 54.)

[2] All visitors to GBCI are subject to inspection prior to being admitted into the institution to ensure they are not carrying any unauthorized items into the institution. (DPFOF ¶ 6.)

in charge of screening visitors. (DPFOF ¶ 16.) However, McDonald does not recall using a handheld metal detector to inspect Payne, or any other visitors, during that week. (DPFOF ¶ 17.) McDonald admits that he would have no reason to physically touch a person's body with the handheld metal detector. (DPFOF ¶ 29.)

Stacy claims that she was not working at GBCI during the week of September 4, 2016. (DPFOF ¶ 22.) Stacy claims that she graduated from the Department's training academy on September 9, 2016, and started working at GBCI the following Monday, September 12, 2016. (DPFOF ¶¶ 23–24.) According to Stacy, her first week at GBCI involved on-the-job classroom training; she was not allowed to use any equipment, including a handheld metal detector. (DPFOF ¶ 25.) Stacy claims that she began on-the-job training outside the classroom on September 19, 2016. (DPFOF ¶¶ 26–28.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. *Id.* at 247–48. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

With cross summary judgment motions, the court must "construe all facts and inferences in favor of the party against whom the motion under consideration is made." *Orr*

*v. Assurant Emp. Benefits*, 786 F.3d 596, 600 (7th Cir. 2015) (citing *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence that would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 322–24. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on her pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (quoting *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003)).

**ANALYSIS**

A plaintiff is entitled to relief under 42 U.S.C. § 1983 only if she demonstrates that "(1) [she] was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon [her] by a person or persons acting under color of state law." *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)). There is no dispute that the defendants were acting under color of law. The parties do, however, dispute whether there was a constitutional violation. Payne alleges that McDonald and Stacy used excessive force in violation of the Fourth Amendment when they inappropriately touched her with a handheld metal detector during the visitor screening process at GBCI. Payne further alleges

that the Department failed to train its correctional officers on how to properly screen visitors with handheld metal detectors.

Moreover, Payne argues that she is entitled to summary judgment on her excessive force claims because the undisputed facts show that she was "seized" at the time of the alleged metal detector incidents and that the inappropriate touching was unreasonable under the circumstances. (Pl.'s Mot. at 7–16.) Defendants argue that McDonald and Stacy are entitled to summary judgment because Stacy was not working at GBCI on the dates in question, any force used against Payne was *de minimis*, and the correctional officers are entitled to qualified immunity. (Defendants' Brief at 6–14; Docket # 53.)

   1.   *Excessive force claims against McDonald and Stacy*

"[T]he Fourth Amendment . . . guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989).[3] As such, "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* at 395.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Courts engaging in this balancing test generally consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made

---

[3] The parties seem to agree, or at least assume, that Payne was "seized" within the meaning of the Fourth Amendment. (*See* Pl.'s Mot. at 10–11; Defs.' Br. at 6–8.)

by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (citing *Graham*, 490 U.S. at 396). "[W]hile significant injury is not required, a claim ordinarily cannot be predicated upon a de minimis use of physical force." *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992)).

The reasonableness inquiry is an objective one, examining "whether the officer's actions are objectively reasonable in light of the totality of the facts and circumstances confronting him or her, without regard for consideration of the officer's subjective intent or motivations." *Estate of Williams v. Ind. State Police Dep't*, 797 F.3d 468, 473 (7th Cir. 2015) (citing *Graham*, 490 U.S. at 397; *Miller v. Gonzalez*, 761 F.3d 822, 828–29 (7th Cir. 2014); *Fitzgerald v. Santoro*, 707 F.3d 725, 733 (7th Cir. 2013)). Consequently, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).

Payne alleges three incidents of excessive force. She alleges that on one visit to GBCI, McDonald touched the handheld metal detector to the top of her buttocks and allowed it to rest there for several seconds. During another visit, McDonald touched her buttocks with the handheld metal detector. As to Stacy, Payne alleges that she pressed a handheld metal detector against Payne's back and moved the handheld metal detector up and down her back.

I begin with Payne's allegation against Stacy. Payne has not provided any evidence to support her allegation that Stacy was responsible for the third alleged use of force. Indeed, the

evidence appears to show that Stacy was not working at GBCI during that time. Stacy asserts that she graduated from the Department's training academy on September 9, 2016. (DPFOF ¶ 23.) Her training transcript supports this assertion, indicating that she completed "Correctional Officer PreService" on "9/9/2016." (Declaration of Deanna Stacy Ex. 1004 at 3, Docket # 57-2.) Likewise, Stacy's work schedule indicates that she was not scheduled to work during the week of September 4, 2016, and that she did not begin on-the-job training at GBCI until September 12, 2016. (Stacy Decl. Ex. 1003 at 1–2, Docket # 57-1.) Stacy further asserts that she was not allowed to use any equipment, including a handheld metal detector, during her first week at GBCI. (DPFOF ¶ 25.)

Payne contends that Stacy should be precluded from using the "it-wasn't-me" defense because the documentation she provided does not show where the training academy was held; she previously claimed that she completed training on September 12, not September 9; and she admitted to touching Payne with the handheld metal detector. (Plaintiff's Memorandum at 17–19, Docket # 66.) I disagree. First, assuming for the sake of argument that the training academy took place within GBCI, it is illogical to believe that Stacy would have been screening visitors prior to completing her preservice training as a correctional officer. Second, regardless of whether Stacy completed the academy on the 9th or the 12th, there is no evidence placing her in visitors' area of GBCI during the week of the 4th. Third, Stacy has consistently denied being present during the alleged metal detector incidents. Her alternative defense theory—that any use of force was *de minimis*—is understandable given Payne's imprecision regarding when the alleged incidents occurred.

Because there is no evidence that Stacy was screening visitors at GBCI during the week of the alleged metal detector incidents, she cannot be found liable for the alleged violation of

7

Payne's constitutional rights. *See Zentmyer v. Kendall County*, 220 F.3d 805, 811 (7th Cir. 2000) (quoting *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996)) ("[L]iability under sec. 1983 arises only when the plaintiff can show that the defendant was 'personally responsible for a deprivation of a constitutional right.'"). Accordingly, Stacy is entitled to judgment as a matter of law on Payne's excessive-force claim.

Even if Payne's allegations are true as to both Stacy and McDonald, the inappropriate touching by the correctional officers was merely a *de minimis* use of force. Visitors at GBCI are screened prior to entry to ensure the safety and security of inmates and staff. Payne alleges that the handheld metal detector touched the top of her buttocks (the first two incidents) and back (the third incident) for merely a couple of seconds. It is undisputed that the touching did not result in any physical injury, like red marks or a bruise, and there is no evidence that Payne's other claimed injuries were caused by the correctional officers' alleged actions. Likewise, there is no evidence that the correctional officers used, or threatened to use, any other force against Payne. Incidental touching during a routine screening to enter a prison falls short of what is required to state a claim of excessive force under the Fourth Amendment. *See DeWalt*, 224 F.3d at 620 (finding single shove by prison guard that resulted in only minor bruising to be a *de minimis* use of force); *Peterson v. Meris*, 09 C 50120, 2011 U.S. Dist. LEXIS 82302, at *10–12 (N.D. Ill. Jan. 27, 2011) (granting summary judgment in favor of correctional officer who pressed a detainee against a wall by her neck on two separate occasions for five seconds or less because the alleged use of force was *de minimis*).

Payne contends that a reasonable jury could find that the use of force was more than *de minimis*, as McDonald admitted there was no reason to touch her with the metal detector

and she did not commit any crime, pose a threat to anyone, or resist the correctional officers' screening efforts. (Pl.'s Mot at 12–16; Pl.'s Mem. at 13–20.) I disagree. The fact that no touching was necessary to carry out the screening objective does not make any incidental touching *per se* unreasonable. "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 9). Moreover, the traditional *Graham* factors—severity of crime, perception of threat, and level of resistance—are inapplicable where, as here, Payne was not under arrest. Those factors are not the exclusive means for deciding whether a use of force was unreasonable. *See Kingsley*, 135 S. Ct. at 2473 ("We do not consider this list to be exclusive.").

Because no reasonable factfinder could conclude that the alleged use of force used against Payne was objectively unreasonable, McDonald and Stacy are entitled to summary judgment on Payne's excessive-force claims.[4]

### 1.1 Qualified immunity

"Qualified immunity shields a government official from liability for civil damages unless his or her conduct violates a clearly established principle or constitutional right of which a reasonable person would have known at the time." *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001)). The plaintiff has the burden of defeating the

---

[4] Payne has filed a motion for sanctions requesting the court to grant her default judgment against Stacy because Stacy failed to comply with a court order directing her to identify the dates and location of the training academy. (Docket # 60.) However, this information is immaterial to the excessive-force claim, as no reasonable factfinder could conclude that the alleged use of force used against Payne was objectively unreasonable. Accordingly, Payne's motion for sanctions is denied.

qualified-immunity defense once the defendants raise it. *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017) (citing *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013)).

> To do so, the plaintiff must show (1) that the defendant violated a constitutional right, when construing the facts in the light most favorable to the plaintiff, and (2) that the right was clearly established at the time of the alleged violation, such that it would have been clear to a reasonable actor that her conduct was unlawful.

*Archer*, 870 F.3d at 613 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "A failure to show either is fatal for the plaintiff's case." *Archer*, 870 F.3d at 613 (citing *Pearson*, 555 U.S. at 236). "The first question is one of law." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). The second requires the plaintiff to show "that there is 'a clearly analogous case establishing a right to be free from the specific conduct at issue' or that 'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" *Id.* (quoting *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001)).

McDonald and Stacy are also entitled to qualified immunity. As explained above, no reasonable factfinder could conclude that the correctional officers violated Payne's constitutional rights. Furthermore, Payne has not shown that it would have been clear to a reasonable correctional officer in McDonald's and Stacy's positions that it was unlawful to make light and incidental contact with a visitor's buttocks and back while screening the visitor with a handheld metal detector. Payne has not pointed to any case finding excessive force in similar circumstances. (*See* Pl.'s Mem. at 20–26.) Likewise, the correctional officers' alleged conduct was not so egregious that no reasonable person could have believed that it would not violate clearly established rights. Qualified immunity, therefore, provides another basis for granting summary judgment in favor of McDonald and Stacy.

*2.    Failure-to-train claim against the Department*

Payne argues that the Department's lack of training on how to screen visitors with a handheld metal detector resulted in McDonald and Stacy subjecting her to excessive force. (Pl.'s Mot. at 16–20.) Defendants argue that Payne's failure-to-train claim should be dismissed because the complaint does not seek prospective relief and the claim is barred by the Eleventh Amendment. (Defs.' Br. at 14–16.)

Only "a person" can be liable in a 1983 action. *See* 42 U.S.C. § 1983 ("Every *person* who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia . . . "). While a municipality is considered a person for purposes of § 1983, *see Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), "the Supreme Court has held that a state is not a 'person' who can be sued under § 1983," *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 403 (7th Cir. 2018) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). A state official acting in his official capacity also is not a person under § 1983. *Will*, 491 U.S. at 71 (citations omitted) (noting that "a suit against a state official in his or her official capacity . . . is no different from a suit against the State itself"). However, a state official in his official capacity is a person under § 1983 when sued for prospective injunctive relief. *Id.* at 71 n.10 (citations omitted).

Payne has sued the Department's Secretary and an unnamed Department academy trainer in their official capacities. (Compl. at 2.) The Department is a state agency, not a municipality, so *Monell* does not apply. *See Silva v. Wisconsin*, 917 F.3d 546, 565 (7th Cir. 2019) ("There is no dispute that the [Department] is a nonconsenting state agency."). Although Payne claims to seek injunctive relief against these officials, the Complaint is silent as to the

nature of that relief (*see* Compl. at 2–10), and her briefs have not added any specificity (*see* Pl.'s Mem. at 25–27). Moreover, it is undisputed that Payne's fiancé is no longer incarcerated at GBCI (DPFOF ¶ 2), and Payne has not alleged that she has any reason to return there or that the lack of training regarding the use of metal detectors is an issue at her fiancé's new location. Because Payne does not seek prospective injunctive relief, the Department (through its secretary and academy trainer) cannot be sued under § 1983.

Payne's complaint also seeks money damages. (*See* Compl. at 10.) However, the Eleventh Amendment bars such suits against a state "unless the State has waived its immunity . . . or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will*, 491 U.S. at 66. Neither has occurred here. Thus, Payne's claim against the Department is barred by the Eleventh Amendment.

Because Payne's complaint does not seek prospective injunctive relief and her claim for damages against state officials is barred by the Eleventh Amendment, the Department is entitled to judgment as a matter of law on Payne's failure-to-train claim.

## CONCLUSION

Nothing in this decision is intended to diminish Payne's subjective perspective of her experience at GBCI. However, excessive force is analyzed on an objective standard. Moreover, at the summary judgment stage Payne must put forth evidence on which a reasonable jury could find in her favor on her excessive force claims. Payne has failed to do so. She has not put forth evidence that Stacy was present on the days of the alleged incident. More critically, Payne fails to show that any force used by either McDonald or Stacy was more than *de minimis*. Additionally, the correctional officers are entitled to qualified immunity. Finally, because Payne does not seek any prospective injunctive relief and the

Department cannot be sued for damages, her failure-to-train claim also fails. For these reasons, Payne's motion for summary judgment is denied, and Defendants' motion for summary judgment is granted.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Plaintiff's motion for sanctions (Docket # 60) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (Docket # 44) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (Docket # 52) is **GRANTED**.

**IT IS FURTHER ORDERED** that the clerk of court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 24th day of February, 2020.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge